IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ROGER T. MAHER, as Personal )
Representative of the ESTATE OF )
DAVID MAHER, )
)
Plaintiff, )
) Case No. CIV-15-264-D
vs. )
) (District Court of Oklahoma County,
STATE OF OKLAHOMA *ex rel.* ) Oklahoma, Case No. CJ-2013-6531)
OKLAHOMA TOURISM & )
RECREATION DEPARTMENT, *et al.*, )
)
Defendants. )

## ORDER

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 60], filed

pursuant to Fed. R. Civ. P. 56. Defendant Justin Young, the sole remaining defendant,

seeks summary judgment on all claims pending against him.[1] Plaintiff has timely

opposed the Motion [Doc. No. 76], and Defendant has replied [Doc. No. 83].[2] Thus, the

Motion is fully briefed and at issue.[3]

---

[1] The Court previously dismissed Plaintiff's claims against Defendant State of Oklahoma
*ex rel.* Oklahoma Tourism and Recreation Department by Order of Dec. 28, 2015 [Doc. No. 35],
and Plaintiff's claims against Defendants Deby Snodgrass and Steve Emmons by Order of June 28,
2016 [Doc. No. 40]. The Court also dismissed some claims against Defendant Young, namely,
an official-capacity § 1983 claim and a negligence claim based on conduct within the scope of his
employment. *See* 2/29/16 Order [Doc. No. 36].

[2] Plaintiff was permitted to file an amended response brief to incorporate a transcript of
deposition testimony received after the filing of his original brief [Doc. No. 66]. *See* 8/10/17
Order [Doc. No. 72]. Defendant also amended his original reply brief [Doc. No. 67].

[3] Defendant has also filed a Notice of Supplemental Authority [Doc. No. 84], regarding
*Estate of Ronquillo v. City of Denver*, No. 16-1476, 2017 WL 6422342, (10th Cir. Dec. 18, 2017).

## Plaintiff's Claims

This action concerns Defendant's conduct as a park ranger employed by the Oklahoma Tourism and Recreation Department ("OTRD") while on duty in McGee Creek State Park in Atoka County, Oklahoma. Plaintiff Roger Maher, personal representative of the Estate of David Maher, seeks to recover damages resulting from a confrontation between Defendant and David Maher (hereafter, "David"), a park patron, on May 4, 2013; Defendant first used pepper spray and later shot David through the window of a car he was driving, causing his death. Plaintiff alleges that Defendant lacked any factual basis to detain David, who was not suspected of any criminal activity in the park, or to use deadly force against him. Plaintiff asserts a claim under 42 U.S.C. § 1983 based on Defendant's alleged uses of excessive force in violation of the Fourth Amendment (*see* Compl. [Doc. No. 1-2], ¶¶ 21-23), and a negligence claim that allegedly is not subject to the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151-72, because Defendant "was acting outside the scope of his employment" with OTRD (*id.* ¶ 27).[4]

## Defendant's Motion

Defendant seeks summary judgment on Plaintiff's claims due to an alleged failure of proof and the defense of qualified immunity. When a defendant raises qualified immunity in a motion for summary judgment, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right,

---

[4] The case was filed in state court but was removed after Plaintiff amended his petition to add federal civil rights claims. Plaintiff is proceeding under the amended petition, which is referred to as the Complaint.

and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation omitted). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Id*.; *accord Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016). "'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 741); *accord White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 137 S. Ct. at 308. (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation omitted)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S. Ct. at 551 (internal quotations omitted).

### Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of its claim or defense, all other factual issues concerning the claim or defense become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Summary Judgment Evidence

Plaintiff objects generally to Defendant's exhibits obtained from law enforcement agencies as improper summary judgment evidence, primarily on the ground that they constitute or contain inadmissible hearsay. *See* Pl.'s Resp. Br. [Doc. No. 76] at 8 n.1.

Plaintiff asserts this objection specifically in response to certain paragraphs of Defendant's statement of facts, stating that the documents on which Defendant relies are hearsay. Defendant makes no response to Plaintiff's evidentiary objection in his reply brief.

While Rule 56 allows the use of materials that are not usually admitted at trial, such as affidavits and depositions, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). Under this rule, "the *form* of evidence produced . . . at summary judgment may not need to be admissible at trial, [but] 'the *content or substance* of the evidence must be admissible.'" *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quoting *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 485 (10th Cir. 1995)) (emphasis added in *Johnson*). Thus, in ruling on summary judgment, courts must disregard a hearsay statement if "there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule." *Montes v. Vail Clinic*, 497 F.3d 1160, 1176 (10th Cir. 2007); *see Johnson*, 594 F.3d at 1209.

With respect to some defense exhibits in this case, Plaintiff makes a valid objection. Defendant has submitted under seal interview reports and other documents prepared during an investigation by the Oklahoma State Bureau of Investigation ("OSBI"); the reports summarize interviews of key witnesses. *See* Def.'s Ex. 9 [Doc. No. 61-1], Ex. 14 [Doc. No. 61-3], Ex. 17 [Doc. No. 61-4], Ex. 20 [Doc. No. 61-6], Ex. 24 [Doc. No. 61-7], Ex. 25 [Doc. No. 61-8]. Defendant relies on the substance of the witnesses' reported statements to establish facts relevant to Plaintiff's claims, particularly what occurred between Defendant and David. Assuming the OSBI reports fall within a hearsay exception, the

witnesses' statements to the OSBI agent would still constitute hearsay. *See*, *e.g.*, *Walker v. City of Okla. City*, No. 98-6457, 2000 WL 135166, *8 (10th Cir. Feb. 7, 2000) (unpublished) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons with no business duty to report may not.") (internal quotation omitted); *see also Moore v. Indehar*, 514 F.3d 756 (8th Cir. 2008) (district court ruling on summary judgment properly did not consider statements in police report that constituted hearsay); *Tranter v. Orick*, 460 F. App'x 513, 515 (6th Cir. 2012) (same).

Defendant, as "the proponent of hearsay evidence bears the burden of establishing the applicability of a hearsay exception." *See United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012). Because Defendant makes no effort to satisfy this burden, facts stated in his brief that are supported only by OSBI reports of witnesses' statements – and to which Plaintiff objects – will not be considered.[5] As a practical matter, however, this ruling has little impact on the discussion *infra*. The same eyewitnesses who were interviewed by OSBI agents have provided affidavits (Alicia Thompson and Teresa Werner) or deposition testimony (Loretta Swank), and/or gave voluntary statements to the Atoka County Sheriff's Office on the date of the shooting, stating their own accounts of what happened. *See* Def.'s Ex. 18 [Doc. No. 61-5] (Teresa Werner), Ex. 19 [Doc. No. 60-19] (Danny Fritcher), Ex. 22 [Doc. No. 60-22] (Alicia Thompson), Ex. 26 [Doc. No. 61-9] (Matt Thompson).

---

[5] Plaintiff does not object to statements of fact based on the OSBI report of Defendant's interview by agents. *See* Def.'s Mot. Summ. J. at 7 & 9-10, ¶¶ 16-17, 34, 36-38, 42 (citing Def.'s Ex. 14, OSBI report of Young interview); Pl.'s Resp. Br. at 11, 12-13 (no hearsay objection to ¶¶ 16-17, 34, 36-38, 42).

Each voluntary statement is a signed, handwritten document and was provided to law enforcement authorities during an investigation. The Court finds this form of evidence substantially complies with the requirements of Rule 56(c)(4) regarding affidavits or declarations, and may be considered.

## Discussion

### A.    Civil Rights Claim Under Section 1983

Plaintiff claims that two separate uses of excessive force by Defendant against David violated the Fourth Amendment:    1) a use of pepper spray during either a consensual encounter or an investigatory detention or *Terry* stop;[6] and 2) a use of deadly force after David fled in response to the assault.    Plaintiff contends the use of pepper spray constituted excessive force because Defendant attempted to detain David without reasonable suspicion of criminal activity, and Defendant's use of deadly force under the circumstances violated the well-established constitutional standards of *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985).    The Court finds it useful in the analysis of these similar but disparate claims to separately address each incident and the facts relevant to each under the arguments presented by the parties.

---

[6]    An investigative detention is permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), "if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime."    *See United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (internal quotation omitted).

### 1. Use of Pepper Spray

#### a. Undisputed Facts[7]

The events of May 4, 2013, began in the office of McGee Creek State Park, where Defendant was present when David came to pay a camping fee. When asked for his name, David gave the name on the credit card used to pay the fee, Loretta Swank. Defendant has testified that he considered this "odd," and when combined with a New York vehicle license plate, it gave him a "bad feeling." *See* Young Dep. 87:19-88:6, 90:1-18. The park employee who received the payment has testified that she considered David's behavior "a little weird." *See* Mansell Dep. 17:2-12.

Later that day, Defendant was approached in the evening by visitors to the park, Teresa Werner and Danny Fritcher, who expressed concern about a couple who had entered the campsite of Ms. Werner's niece, Alicia Thompson, and her family. The couple, later identified as David and Ms. Swank, parked their vehicle after nightfall in a parking lot near the campsite occupied by the Thompson family, and walked into the campsite uninvited. When Ms. Thompson asked who they were, David said they were "just some people." *See* Thompson Aff. [Doc. No. 60-10], ¶ 6. The couple approached the campfire, and the Thompsons offered them a soda or beer. David accepted a beer.

Ms. Werner and Mr. Fritcher were visiting the Thompson family when the couple arrived, but soon left to go home. After leaving the campsite, Ms. Werner and

---

[7] Because the question presented involves the defense of qualified immunity, "the Court considers only the facts that were knowable to the defendant officer[]." *White*, 137 S. Ct. at 550 (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015)). The Court states only facts that are properly supported and not opposed in the manner required by Rule 56(c), and that are relevant to the Court's analysis of the issues.

Mr. Fritcher attempted to find the unidentified couple's campsite because they viewed the couple's behavior as odd, and had a "bad feeling" about the couple. *See* Werner Aff. [Doc. No. 60-21], ¶ 8. While looking for the campsite, Ms. Werner encountered Defendant and reported her concerns about the couple. Specifically, Ms. Werner told Defendant "about where the couple had parked their car, and how they came into Thompsons' campsite without invitation" and that she and Mr. Fritcher were going back to the campsite. *Id*. ¶¶ 12-13. Defendant followed Ms. Werner and Mr. Fritcher to the camping area.

Defendant located the couple's car in the parking lot, approached it in his vehicle, and activated his emergency lights. It was clear that Defendant was a law enforcement officer. Defendant was approached by a woman, later determined to be Ms. Swank, who told him everything was fine. When he asked who was with her, Ms. Swank "made up some girl's name." *See* Swank Dep. 133:6-10. Defendant has testified that he knew then "something was wrong" because Ms. Swank had a male companion. *See* Young Dep. 96:17-97:3.

Defendant approached the Thompsons' campsite and identified himself as a park ranger. When he entered the campsite, Defendant saw David standing with a beer in one hand and the other hand in his pocket. Defendant has testified that he was apprehensive because David had a knife in a scabbard on his belt and seemed to be attempting to hide his identity. Defendant immediately directed David to show his hands, and David did not comply. Defendant asked David for identification, and David did not answer. Defendant has testified that David's lack of response added to his apprehension.

Defendant drew a pepper spray canister from a holder on his belt, and twice directed David to show his hands or be pepper sprayed. David again refused to comply, and Defendant deployed the pepper spray. David dropped his beer can and ran away from the campsite.

The evidence does not permit a determination that Defendant's effort to pepper spray David was successful, that is, that the spray reached David or had any effect. In a statement written the morning after the incident, Defendant stated he "deployed pepper spray to the suspect[']s face." *See* Def.'s Ex. 31 [Doc. No. 60-31] at 1.[8] The parties cite no deposition testimony by Defendant on this issue. An OSBI report of an interview of Defendant states that he "attempted" to pepper spray David. *See* Def.'s Ex. 14 [Doc. No. 61-3] at 4.[9] Ms. Swank has testified that she does not know whether Defendant sprayed David or missed him; her testimony is that "David turned" and "attempted to evade the pepper spray" and "took off running." *See* Swank Dep. 141:24-142:13, 143:5-8. Ms. Thompson has stated that "[Defendant] tried to pepper spray [David], but [he] ran into the woods." *See* Thompson Aff. [Doc. No. 60-10] ¶ 32. In voluntary statements given to the Atoka County Sheriff's Office, Ms. Werner stated that Defendant "started to spray [David] and he took off running" (Def.'s Ex. 18 [Doc. No. 61-5] at 2), and Mr. Fritcher

---

[8] Both parties rely on this statement; Plaintiff has submitted a copy as Exhibit 6 to his response brief [Doc. No. 76-6]. From the record, this appears to be an unsworn statement, and the circumstances under which Defendant prepared it are not explained. Absent an objection, however, the Court accepts the document as summary judgment evidence. There are other duplicate exhibits in the summary judgment record; in all future instances, the Court cites in this Order only the first submission made by Defendant.

[9] Internal page numbers are not visible on the interview report so the Court uses the page numbers assigned by the ECF system. As previously noted, Plaintiff does not object to the consideration of this OSBI report. *See supra* note 5.

stated that Defendant "sprayed toward [David] and he turned his head and took off running."  *See* Def.'s Ex. 19 [Doc. No. 60-19] at 2.  The medical examiner's autopsy report is silent concerning the presence of pepper spray on David's body or clothes, but there is no indication the medical examiner was asked to test for pepper spray.

### b.    Constitutional Violation

A Fourth Amendment claim of excessive force is governed by "a standard of objective reasonableness, judged from the perspective of a reasonable officer on the scene." *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015); *see Scott v. Harris*, 550 U.S. 372, 381 (2007).  Plaintiff's theory of liability with respect to Defendant's use of pepper spray is unclear.  Plaintiff seems to argue alternatively that Defendant's initial contact with David was a consensual encounter and so using any force at all violated the Fourth Amendment, or it was an invalid *Terry* stop (lacking reasonable suspicion of criminal activity) for which the use of pepper spray violated the Fourth Amendment.  *See* Pl.'s Resp. Br. [Doc. No. 83] at 30-31, 37.[10]  Plaintiff contends generally that genuine disputes of fact regarding the nature of the encounter and the reasonableness of Defendant's conduct preclude summary judgment.

Plaintiff's arguments are misguided.  "[W]ithout a seizure, there can be no claim for excessive use of force in effectuating that seizure."  *Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015); *accord Farrell v. Montoya*, 878 F.3d 988, 937 (10th Cir. 2017).

---

[10] Although unclear, Plaintiff may also be arguing that Defendant made an invalid attempt to arrest David (because he lacked probable cause to believe criminal activity was occurring) and that the use of pepper spray under the circumstances was unreasonable and violated the Fourth Amendment.  *See id.* at 30 (discussing probable cause for an arrest).

Thus, for Plaintiff to establish an excessive force claim based on Defendant's use of pepper spray, Plaintiff "must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010) (internal quotation omitted); *accord Farrell*, 878 F.3d at 937. "When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submits to the assertion of authority.'" *See Untied States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (quoting *California v. Hodari D.*, 499 U.S. 621, 625-626 (1991)).

In *Brooks*, 614 F.3d at 1223-24, the Tenth Circuit held that a fleeing suspect was not seized even though he was struck by an officer's bullet because he continued to flee and did not submit to the officers pursuing him; the shot "clearly did not terminate [the suspect's] movement or otherwise cause the government to have physical control over him." *Id.* at 1224. More recently, in *Farrell*, 878 F.3d at 939, the court of appeals held that a van driver was not seized when an officer fired three shots at her vehicle, where the shots did not halt the driver's departure. And in *Reeves v. Churchich*, 484 F.3d 1244, 1253 (10th Cir. 2007), the court held that the plaintiffs were not seized by officers who pointed firearms at them and issued orders because the plaintiffs failed to comply with the orders. "A submission to a show or assertion of authority requires that a suspect *manifest compliance* with police orders." *Farrell*, 878 F.3d at 939 (internal quotation omitted) (emphasis in *Farrell*).

Whether a seizure occurred is a question of law that is decided by considering "the totality of the circumstances." *See Salazar*, 609 F.3d at 1064. In this case, on the

undisputed facts shown by the summary judgment record, the Court finds that David was not seized during his initial encounter with Defendant at the campsite. David did not submit to Defendant's show of authority when Defendant, acting as a law enforcement officer, asked David for identification and ordered David to show his hands. Nor did David submit when Defendant drew his pepper spray canister, threatened to use it, and deployed pepper spray at David. Instead, David simply ran away from the campsite and fled toward the parking lot and his parked vehicle. Up to that point, there was no seizure, and therefore, there could be no Fourth Amendment violation.

### c.   Clearly Established Law

Even if Plaintiff demonstrated a dispute of facts regarding a seizure, Plaintiff still needs to show that Defendant's conduct contravened clearly established law. Plaintiff must offer case law making it "sufficiently clear that every reasonable official would have understood that what [Defendant was] doing" violated the Fourth Amendment. *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation and alteration omitted); *accord Mullenix*, 136 S. Ct. at 308; *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). As the Supreme Court observed in *Reichle*, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665 (internal quotations and omitted); *accord White*, 137 S. Ct. at 552; *Mullenix*, 136 S. Ct. at 308. "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine,

here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Plaintiff offers no case law to support his § 1983 claim based on Defendant's use of pepper spray against David. The closest Plaintiff comes to providing legal support for his pepper spray claim is by reference to this Court's order denying Defendant's Rule 12(b)(6) motion. *See* Pl.'s Resp. Br. [Doc. No. 76] at 26-27. At the pleading stage, the Court rejected Defendant's qualified immunity defense based on a finding that "Plaintiff has alleged conduct that would violate a Fourth Amendment right that was clearly established in May 2013." *See* 2/29/16 Order [Doc. No. 36] at 12 (discussing *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008), which held "the *Graham* inquiry applies to the use of . . . pain-inflicting compliance technique[s]" such as pepper spray). At this stage of the case, however, after full factual development of his claims, Plaintiff must present existing precedent that places "beyond debate" the constitutional question of whether Defendant's use of pepper spray violated the Fourth Amendment. *See Mullenix*, 136 S. Ct. at 308.

A failure to identify legal authority showing a clearly established right is fatal to Plaintiff's § 1983 pepper-spray claim. *See Gutierrez*, 841 F.3d at 902; *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013). The case law previously cited by the Court, *Fogarty*, states a broad proposition; it provides no direction in a particularized sense under the undisputed facts of this case.[11] Therefore, for this additional reason, the Court finds

---

[11] In *Fogarty*, the plaintiff was arrested for disorderly conduct during an antiwar protest; the arresting officers used tear gas and a "pepper ball" device, and placed the plaintiff's wrist in a painful "hyperflexion position" that resulted in a torn tendon. *See Fogarty*, 523 F.3d at 1152. The court found this level of force was unreasonable under the circumstances and the defendants were not entitled to qualified immunity because, in addition to a use of physical force sufficient to tear

that Defendant is entitled to qualified immunity from Plaintiff's § 1983 claim alleging an unconstitutional use of pepper spray.

## 2. Use of Deadly Force

### a. Undisputed Facts

When David ran from the campsite, Defendant pursued him into the woods. While running after David, Defendant yelled commands for David to stop. David did not comply but continued running toward the parking lot and his vehicle. David did not run directly to the car; he first ran past it and around the parking lot until Defendant became fatigued and slowed down. David then reached a position where the vehicle was between him and Defendant. With David on the driver's side and Defendant on the passenger's side, David was able to enter the vehicle, lock the doors, and start the engine.

Defendant moved into position in front of the vehicle with his gun drawn, and ordered David to stop and get out of the vehicle. David did not comply but instead put the car in gear. According to Defendant, David first attempted to back away but there was a ditch behind the vehicle. David proceeded to drive forward toward Defendant while Defendant was standing in front of the vehicle. With the car moving toward him "at a pretty decent pace" (Thompson Aff. ¶ 39), Defendant moved away from the car's path and toward the driver's side of the vehicle. As Defendant was moving, and as the car was

<hr/>

a tendon, prior precedents "assumed that the use of mace and pepper spray could constitute excessive force" and were sufficient "to portend the constitutional unreasonableness of defendants' alleged actions" under the circumstances. *Id*. at 1161-62. All *Graham* factors weighed in favor of a finding of unreasonable force. *Id*. at 1160. Plaintiff does not explain how the guidance of *Fogarty* bears on his case.

moving toward him or as it moved past him – the exact timing may be disputed – Defendant discharged his firearm toward the driver's window.

Defendant has testified that events happened simultaneously; in his words, "as I was moving, the vehicle is coming and I fired – I fired three shots as I was moving and it was passing." *See* Young Dep. 115:8-10.    Plaintiff reads Defendant's written statement from the day after the shooting to say Defendant jumped to the side of the vehicle and then fired three times into the driver-side window as the car passed him, after he was no longer in danger of being hit.    The exact statement, with sentences regarding Defendant's state of mind omitted, is:

> The suspect then put the vehicle in drive and gave the vehicle gas moving toward me.    I jumped away from the vehicle to the driver side. . . .    I fired my side arm three times into the driver side window.

Def.'s Ex. 31 [Doc. No. 60-31] at 1.    The Court finds the temporal inference that Plaintiff draws from this statement is not a reasonable one.    A reasonable fact finder would not view this description as Defendant's admission that he jumped aside and then fired at the vehicle from a safe spot, as Plaintiff argues.

Plaintiff also purports to rely on evidence of a bullet trajectory.    Plaintiff contends the trajectory evidence shows "the bullet passing through the driver side window, traveling in a forward direction (back to the front of the car[]), indicating the front of the vehicle was well past Young when he [shot] David."    *See* Pl.'s Resp. Br. at 17 (response to ¶ 75). According to Plaintiff, the evidence shows Defendant was positioned "slightly behind the driver side window" when he fired.    *Id.* (response to ¶ 76).    Plaintiff does not cite any evidence in the summary judgment record to support these assertions.

An examination of the record reveals that the OSBI conducted a shooting investigation and prepared a report.[12] This report, submitted by Defendant, describes the trajectory of a bullet that struck the steering wheel as having a direction of travel "slightly from front to back." *See* Def.'s Ex. 33 [Doc. No. 61-13] at 21 (ECF numbering). The autopsy report describes two bullet wounds. For a bullet that struck David's left upper arm and chest, the direction of travel was "left to right, slightly forward, approximately horizontal;" a bullet that entered and exited David's left lower arm traveled "back to front, slightly upward, neither left nor right." *See* Def.'s Ex. 27 at 3 (ECF numbering). These trajectories suggest the car was moving past Defendant as he fired three shots, but they do not permit any inference regarding Defendant's movement or the timing of the shots. No evidence permits any estimation of the speed of the car or the critical events.

Defendant has testified that he believed David was trying to hit him with the car and, while David was driving toward him, Defendant was afraid the car would hit him. Defendant has also testified that if David missed him the first time, Defendant thought David might turn around and make a second attempt. In his written statement, Defendant said he felt vulnerable because he "was in the middle of a parking lot with no cover to move to." *See* Def.'s Ex. 31 at 1. Inconsistent with this statement, Defendant described the location of events during his deposition as occurring at one end of the parking lot; he testified that he could have been in a wooded area by moving 10-15 yards from his location facing the car. Defendant also testified, however, that the car's direction of travel was

---

[12] The OSBI submitted its report to the district attorney, who determined that the shooting was justified.

such that it was not headed toward the exit of the parking lot.    That is, while David was driving toward Defendant, David was moving away from the only exit.[13]

There is no dispute that the steering wheel of the car was turned toward the left at the time it was struck by Defendant's bullet.    While this suggests David was turning toward Defendant's location on the driver's side of the vehicle, this does not necessarily mean he was aiming at Defendant.    Again, no inference is possible regarding the timing of this turn, that is, whether it occurred before, during, or after Defendant fired his gun.

Defendant presents opinion testimony of an expert in police practices and uses of force, Ron Martinelli, that Defendant "was past the point of the vehicle being a threat to him when he fired his weapon."    *See* Martinelli Dep. 187:1-5.    The factual basis of this opinion is unclear, but Dr. Martinelli's premise seems to be that "the front of the vehicle, the striking part of the vehicle, was past Ranger Young when he fired his weapon."    *Id*. 187:20-23.    According to Dr. Martinelli, "the only thing that I can determine and I think can be determined by this evidence is that when Ranger Young fired his weapon, the front of the vehicle was already past the ranger, and Ranger Young was somewhere off to the driver's side of Mr. Maher's vehicle."    *Id*. 183:8-13.    Dr. Martinelli found no forensic evidence that "can tell us what the speed of that vehicle is at the time that it was moving when . . . Ranger Young fired upon Mr. Maher."    *Id.* 186:9-13.

---

[13]    This testimony was confirmed by Plaintiff's expert, whose opinions are discussed *infra*. The vehicle was facing "the opposite direction of the exit;" it was not headed toward the exit at the time of the shooting.    *See* Martinelli Dep. 177:14-20.

### b. Constitutional Violation

"[T]o establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable." *Davis v. Clifford*, 825 F.3d 1131, 1134 (10th Cir. 2016) (internal quotation omitted). According to the Supreme Court,

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (quotations omitted); *see Scott*, 550 U.S. at 383. While these factors may be relevant, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see Lundstrum v. Romero*, 661 F.3d 1108, 1126 (10th Cir. 2010).

"The Fourth Amendment permits an officer to use deadly force only if there is 'probable cause to believe that there [is] *a threat of serious physical harm to [the officer]* or to others.'" *Tenorio*, 801 F.3d at 1264 (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)) (alterations and emphasis added in *Tenorio*); *see Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010); *Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009). In assessing the threat of harm posed to an officer, federal courts have considered "a number of non-exclusive factors. These include (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the

weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Estate of Larsen*, 511 F.3d at 1260; *see Thomson*, 584 F.3d at 1314-15, 1318-19. Again, these factors "are only aids in making the ultimate determination, which is whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Tenorio*, 802 F.3d at 1164 (internal quotation omitted).

"The reasonableness of the officers' use of force depends not only on whether [the officers] believed they were in danger at the time but also whether their 'own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" *See Thomson*, 584 F.3d at 1320 (quoting *Allen v. City of Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997)). "The conduct of the officers before a suspect threatens force is relevant only if it is 'immediately connected' to the threat of force" and "only if it rises to the level of recklessness." *Id.* (quoting *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)). "[T]his analysis is 'simply a specific application of the "totality of the circumstances" approach inherent in the Fourth Amendment's reasonableness standard.'" *Id.* (quoting *Medina*, 252 F.3d at 1132).

Applying these standards in this case, the Court finds that Plaintiff has failed to demonstrate sufficient facts to permit a reasonable conclusion that Defendant violated David's Fourth Amendment right to be free from excessive force. Accepting Plaintiff's properly supported facts as true and viewing them in the light most favorable to him, a reasonable fact finder could not conclude that Defendant's use of deadly force was objectively unreasonable under the totality of the circumstances confronting him at the

time. Nor could a fact finder reasonably conclude that reckless conduct by Defendant caused the need to use deadly force.

Addressing the sequence of events in order, Defendant did not act unreasonably by pursuing David into the parking lot and attempting to stop him from leaving the area. Although David was simply a park patron and Defendant had no reason to suspect he had committed a felony offense, Defendant knew that David was armed with a knife, had ignored reasonable law enforcement commands to identify himself and show his hands, and was fleeing from law enforcement contact into a public park at night. Further, once David had entered his car and was disregarding Defendant's commands to stop, it was reasonable for Defendant to position himself in front of the vehicle to prevent David from driving away.

Turning to the events immediately surrounding Defendant's use of deadly force, one could not reasonably find from the facts and evidence presented that once David began driving toward him, Defendant was unreasonable in perceiving an imminent danger. A reasonable law enforcement officer would have felt threatened by a vehicle being driven directly toward him, with the driver refusing commands to stop, and would have reasonably believed that a use of deadly force to defend himself was appropriate. The circumstances demanded a quick decision, and Defendant's decision to both move evasively and fire defensively could not reasonably be viewed as an unreasonable choice. David may have initially intended to flee the park in his vehicle to avoid a confrontation with Defendant, and may have been attempting to elude Defendant when he began driving the car. The undisputed facts show, however, that David was not driving away from Defendant

immediately before the shooting occurred but, instead, was driving directly toward him, and Defendant was headed away from the only means of exiting the parking lot. It is undisputed that David knew Defendant was a law enforcement officer and that David disregarded clear commands to stop and exit the vehicle.

In summary, the facts properly presented by Plaintiff provide no basis to find that Defendant intentionally fired through the driver's side window of David's vehicle after the car had already passed him, while positioned safely to the side of the vehicle, as Plaintiff argues. While there is no way of knowing the temporal proximity of events, there is no evidence to contradict Defendant's testimony that he was taking evasive action, moving and firing almost simultaneously in an effort to protect himself from an immediate threat. Viewing the relevant facts established by the record and all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has failed to establish Defendant's use of deadly force was constitutionally unreasonable. *See Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (where material facts of Fourth Amendment case are undisputed, courts "decide whether the defendants' actions were reasonable as a matter of law").

For these reasons, the Court finds that Plaintiff has not shown that Defendant's conduct violated the Fourth Amendment.

### c.  Clearly Established Law

Assuming a different conclusion could be reached, Plaintiff would still need to present clearly established law that overcomes Defendant's qualified immunity. The court of appeals has summarized the qualified immunity analysis in a § 1983 excessive force case as follows:

> "Because the existence of excessive force is a fact-specific inquiry . . . , 'there will almost never be a previously published opinion involving exactly the same circumstances.'" *Casey* [*v. City of Fed. Heights*], 509 F.3d [1278] at 1284 [(10th Cir. 2007)]. Thus, we have adopted a sliding scale: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). In fact, we do not always require case law on point. "[W]hen an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law." *Casey*, 509 F.3d at 1284.

*Morris v. Noe*, 672 F.3d 1185, 1196-97 (10th Cir. 2012); *see Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014). The Court is mindful, however, that the Supreme Court has cautioned against defining clearly established law "at only a general level,'" holding "that *Garner* and *Graham* do not by themselves create clearly established law outside 'an obvious case.'" *White*, 137 S. Ct. at 552 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), and citing *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023, (2014)).

In this case, Plaintiff presents in his summary judgment brief no legal authority other than *Garner* and a Ninth Circuit case, *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010), bearing on the question of whether the law was clear that Defendant's use of deadly force was unreasonable under the circumstances. *See* Pl.'s Resp. Br. at 29, 37-38. The circumstances presented in *Garner* did not involve a fleeing person's use of a vehicle. Plaintiff makes no effort to compare the facts of this case and *Bryan*, and the Court finds no useful guidance in *Bryan*, which involved the use of a taser against a man who was standing outside his car at the time. The man was "only dressed in tennis shoes and boxer shorts" making it "apparent that he was unarmed," and he was "shouting gibberish" and expletives but "at no point did he level a physical or verbal threat against" the police officer.

*Bryan*, 630 F.3d at 826-27. The man was approximately 15 to 25 feet away from the officer, did not advance, and "was not even facing [the officer] when he was shot." *Id*. at 827. The court of appeals found that the totality of circumstances did not justify the use of a taser because "[a]n unarmed, stationary individual, facing away from an officer at a distance of fifteen to twenty-five feet is far from an 'immediate threat' to that officer" and the man's "erratic, but nonviolent, behavior [was not] a potential threat to anyone else." *Id*. Because *Garner* and *Bryan* do not suggest a Fourth Amendment violation occurred in this case, the Court finds that Plaintiff has failed to show that clearly established law prohibited Defendant's conduct.

For this additional reason, the Court finds Defendant is entitled to qualified immunity from individual liability under § 1983 for his use of deadly force.

## B.    State Law Negligence Claim

To prevail on a state law negligence claim against Defendant personally, Plaintiff must establish that Defendant was acting outside the scope of his employment as a park ranger for OTRD. Plaintiff argues that the facts and evidence of this case would allow such a finding based on Defendant's "fail[ure] to follow the policies and procedures of the department, which were formulated to adhere to the requirements of the Fourth Amendment, when he pepper sprayed and shot David." *See* Pl.'s Resp. Br. at 38. Plaintiff also makes a conclusory argument that a dispute of material facts presents a jury question as to whether Defendant was acting within the scope of his employment. *Id*. at 39.

The GTCA defines "scope of employment" as the "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority." *See* Okla. Stat. tit. 51, § 152(12). The Oklahoma Supreme Court has held: "Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1167 (Okla. 2009); *see Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996).

Further, the Oklahoma Supreme Court has adopted an "objective reasonableness standard applicable to police use of force" that uses the "totality-of-the-circumstances" approach "like that employed by the United States Supreme Court in § 1983 civil rights claims." *See Morales v. City of Oklahoma City*, 230 P.3d 869, 880 & nn. 47-48 (Okla. 2010). Despite a similarity in the two standards, the supreme court has expressly rejected the view that the standard is fixed and can be decided as a matter of law. Instead, a negligence claim based on a police officer's alleged use of excessive force is "measured by a standard that has no fixed dimensions but shifts with the circumstances" and presents "a classic case for jury resolution." *Id*. at 881 (footnote omitted).

Regarding Plaintiff's negligence claim against Defendant personally, Plaintiff articulates no facts to support a finding that Defendant acted outside the scope of his employment as a park ranger during the underlying events. Plaintiff's argument that Defendant violated departmental policies is contrary to Defendant's statement of facts showing that OTRD convened a "Firearm/Shooting Review Board" regarding the incident and the board found in June 2013 no violation of departmental procedures by Defendant

and "no reason for disciplinary action."   *See* Def.'s Ex. 39 [Doc. No. 60-39].   Plaintiff makes no response to Defendant's factual showing in this regard, except to point out alleged deficiencies in OTRD's review process.   *See* Pl.'s Resp. Br. at 17-18.   Given these facts, the Court has some doubt about Plaintiff's conclusory argument that the scope-of-employment issue presents a jury question.   Nevertheless, the Court cannot say that only one reasonable conclusion can be drawn from the facts presented.   Further, under Oklahoma law, Plaintiff's negligence claim presents a classic case for jury resolution.

The Court is mindful of the Tenth Circuit's guidance regarding an exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).   "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."   *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (declining pendent jurisdiction where federal claims were resolved before trial; reversing summary judgment on state tort claim against police officers and remanding with instructions to dismiss the claim); *see also VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1149050 (10th Cir. 2017).   Concerning a district court's exercise of discretion, the court of appeals has stated:

> Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.   The district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.

*Thatcher Enter. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990); *see Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

Applying the factors identified in *Thatcher*, the Court finds it should not retain supplemental jurisdiction over Plaintiff's state law claim. The Court is aware of the extent of the parties' pretrial efforts, which include the disclosure of witnesses and exhibits, the completion of discovery, and the filing of dispositive motions. The Court is also aware of the length of time that the case has been pending. However, no trial submissions have been made, nor have any substantial trial preparations been done. The case is not currently set on any trial docket. Under these circumstances, the Court finds Plaintiff's state law claim against Defendant should be remanded to the state court from which the action was removed.

## Conclusion

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's § 1983 claim but the tort claim against Defendant should be remanded to state court for resolution on the merits.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 60] is GRANTED in part and DENIED in part, as set forth herein. Defendant Justin Young is entitled to summary judgment on Plaintiff's § 1983 claim.[14]

---

[14] The action against all other defendants has previously been dismissed. *See supra* note 1.

IT IS FURTHER ORDERED that the case is remanded to the District Court of Oklahoma County, Oklahoma, for further proceedings regarding Plaintiff's sole remaining tort claim against Defendant Justin Young.

IT IS SO ORDERED this 15th day of March, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE